UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER M. SCRUFARI,

                                    Plaintiff,

            v.

MICHAEL J. ASTRUE, Commissioner of
 Social Security,

                                    Defendant.

_____

|  |  |
|---|---|
| | **REPORT**<br>**and**<br>**RECOMMENDATION** |
| | **11-CV-0161A(F)** |

APPEARANCES:        FELICE A. BRODSKY
                    Attorney for Plaintiff
                    125-B Professional Parkway
                    P.O. Box 557
                    Lockport, New York 14095

                    WILLIAM J. HOCHUL, JR.
                    UNITED STATES ATTORNEY
                    Attorney for Defendant
                    JANE B. WOLFE
                    Assistant United States Attorney
                    Federal Centre
                    138 Delaware Avenue
                    Buffalo, New York 14202, and
                    STEPHEN P. CONTE
                    Regional Chief Counsel - Region II
                    MONIKA K. PROCTOR
                    Assistant Regional Counsel
                    United States Social Security Administration
                    Office of the General Counsel, of Counsel
                    26 Federal Plaza
                    Room 3904
                    New York, New York 10278

## JURISDICTION

        This action was referred to the undersigned by Honorable Richard J. Arcara on

May 31, 2011.  The matter is presently before the court on a motion for judgment on the

pleadings filed on October 27, 2011 by Defendant (Doc. No. 7).

## BACKGROUND

Plaintiff Christopher Scrufari ("Plaintiff"), seeks review of Defendant's decision denying him Social Security Disability Insurance benefits ("SSDI") under Title II of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 12).[1] Defendant further determined Plaintiff meets the insured status requirements through December 31, 2010 (R. 14), that Plaintiff has the severe impairment of herniated/bulging lumbar discs that does not meet or medically equal a listed impairment under 20 CFR Part 404, Subpt P, Appendix 1, that Plaintiff has the residual functional capacity to perform light work, limited to incidental stooping, kneeling, crouching, crawling, balancing and climbing with a discretionary sit/stand option (R. 15), and that Plaintiff was not disabled within twelve months of the alleged onset date of disability of October 21, 2005. *Id*. Defendant further determined that even if the Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, its alleged persistence and limiting effects were not credible to the extent they were inconsistent with Plaintiff's residual functional capacity assessment. (R. 16). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision. *Id.*

---

[1] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

**PROCEDURAL HISTORY**

Plaintiff filed applications for disability benefits on December 12, 2006 (R. 87), alleging disability based on herniated, torn and bulging discs in his lower spine. (R. 139). The applications were initially denied by the Defendant on February 21, 2007. (R. 56). Pursuant to Plaintiff's request, filed March 21, 2007 (R. 60), a hearing was held before Administrative Law Judge Lamar Davis ("Davis") ("the ALJ") on December 10, 2008, in Buffalo, New York. (R. 24-54). The Plaintiff, represented by Lynn Kwon, Esq., ("Kwon") appeared and testified at the hearing. (R. 24-54). Testimony was also given by vocational expert Jay Steinbrenner ("Steinbrenner") ("the VE"). (R. 48-53). The ALJ's decision denying the claim was rendered on January 8, 2009. (R. 9-21).

On February 16, 2009, Plaintiff requested review of the ALJ's decision by the Appeals Council. (R. 82). The ALJ's decision became Defendant's final decision  when the Appeals Council denied Plaintiff's request for review on November 23, 2010. (R. 4-8). This action followed on February 25, 2011, with Plaintiff essentially alleging the ALJ erred by failing to consider him disabled. (Doc. No. 1).

Defendant's answer, filed May 27, 2011 (Doc. No. 4), was accompanied by the record of the administrative proceedings. On October 27, 2011, Defendant filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 8) ("Defendant's Memorandum"). Plaintiff did not file any response to Defendant's motion for judgement on the pleadings. Oral argument was deemed unnecessary.

Based on the following, Defendant's motion for judgment on the pleadings should be GRANTED, and the Clerk of the Court should be instructed to close the file.

### FACTS[2]

Plaintiff, Christopher M. Scrufari ("Plaintiff"), was born on April 9, 1965, has a

high school education, is married, has three children, completed two years of college,

and worked most recently as a carpenter from 1980 until October 21, 2005 the alleged

date of disability. (R. 140). Plaintiff also worked as an interim minister from January 2,

2006, until the date of the hearing on December 10, 2008. (R. 126). Plaintiff alleges he

injured his lower back from an accident suffered while working as a carpenter on

October 21, 2005. (R. 174).

On October 21, 2005, Plaintiff sought treatment from the emergency room at

Mount St. Mary's Hospital in Lewiston, New York for sudden onset of lumbar pain

attributed to a work related incident suffered the same day. (R. 174). Upon examination,

Harnath Clerk, M.D. ("Dr. Clerk") evaluated Plaintiff with lumbar pain and prescribed

Torodal (painkiller), Valium (muscle spasms), and Dilaudid (painkiller), and ordered a X-

ray of Plaintiff's lumbro-sacral spine that showed normal results. (R. 177). On

November 5, 2005, Lawrence Rand, M.D. ("Dr. Rand") completed a magnetic

resonance imaging ("MRI") test of Plaintiff's lumbro-sacral spine that revealed a very

large tarlov cyst (cerebrospinal fluid-filled sac in the spinal canal) on Plaintiff's S-2[3]

vertebrae, and narrow rudimentary disk space at Plaintiff's S1-S2 disc space. (R. 228-

29). Dr. Rand opined Plaintiff's MRI revealed mild disc degeneration (age-related

breakdown of spinal discs) at Plaintiff's L5-S1 vertebral segment, and a small left

---

[2]Taken from the pleadings and the administrative record.

[3] The lumbar spine has 5 vertebral bodies that extend from the lower thoracic spine (upper back) to the sacrum (bottom of the spine). Lumbar segments number L1-L5, and sacral segments number S1-S5.

4

posterolateral (back side) to left lateral foraminal disc herniation resulting in mild

pressure against Plaintiff's L5 and S1 nerve roots, mild disc degeneration of Plaintiff's

L4-L5 vertebral segment with mild bulging of Plaintiff's annulus fibrosus (covering on

the outside of a disc), evidence of a left lateral annular fissure without evidence of disc

herniation, mild disc degeneration of Plaintiff's L3-L4 vertebral segment with a small left

lateral foraminal disc herniation without obvious nerve root compression, a benign L4

vertebral body hemangioma (lesion), mild disc degeneration at Plaintiff's L2-L3

vertebral segment without evidence of bulge or herniation, normal vertebral segments

at L1-L2, and T11-T12, with no evidence of spinal stenosis, or intra-dural or extra-dural

neoplasm (spinal tumor). (R. 228).

On February 24, 2006, Thomas A. Summers, M.D. ("Dr. Summers") completed

an MRI test on Plaintiff's lumbar region that revealed

> mild acquired central canal stenosis at [Plaintiff's] L2-3 where there is a
> concentric tear of the posterior aspect of the annulus fibrosus, mild ligamentum
> flavum hypertrophy and mild circumferential bulg of [Plaintiff's] annulus fibrosus
> . . . mild circumferential bulge of [Plaintiff's] annulus fibrosus at L3-4 and a small
> far left posterolateral disc protrusion with mild left sided lateral foraminal
> compromise and mild acquired central canal stenosis . . . mild circumferential
> bulge of the annulus fibrosus at [Plaintiff's] L4-5 and a short segment concentric
> tear of the posterolateral aspect of the annulus fibrosus and mild posterolateral
> endplate hypertrophy contributing to a mild degree of bilateral neural foraminal
> stenosis at L4-L5 . . . concentric tear of the annulus on the left at L4-5 [and]
> small broad based far left posterolateral disc protrusion at [Plaintiff's] L5-S1
> causing mild left neural foraminal compromise.

(R. 231).

A bone scan of Plaintiff's lumbro-sacral spine on March 14, 2006 by Kenneth K. Shim,

M.D. ("Dr. Shim") was normal. (R. 232).

On July 5, 2006, Andrew Cappuccino, M.D. ("Dr. Cappuccino") completed a

consultative surgical examination on Plaintiff and noted Plaintiff reported improved symptoms and was reticent to surgical intervention. (R. 178-79). Dr. Cappuccino requested insurance authorization for a back brace, and assessed Plaintiff with a "marked degree of disability." *Id*.

After Dr. Cappuccino's July 5, 2006 consultative surgical examination, Plaintiff did not seek further medical care for his lower back impairment, other than chiropractic treatment with Douglas Monteleone, D.C. ("Dr. Monteleone"), which Plaintiff received from November 5, 2005 until July 10, 2007. (R. 213-27, 257-59).

On January 22, 2007, at the request of the Social Security Administration ("SSA") John Schwab, D.O. ("Dr. Schwab"), completed a consultative internal medical examination on Plaintiff's lumbar spine that showed full flexion, full extension, full lateral and bilateral movement upon lateral flexion, straight leg raising with 40 degrees of flexion on Plaintiff's right side, and 30 degrees of flexion on Plaintiff's left side. (R. 210). Dr. Schwab opined Plaintiff exhibited decreased sensation to light touch in his lower extremity, and a mild to moderate restriction to bend, lift, and carry relative to Plaintiff's positive straight leg test results. *Id*. On January 24, 2007, Lawrence S. Liebman, M.D. ("Dr. Liebman") reviewed an X-Ray of Plaintiff's lumbro-sacral spine taken on January 24, 2007 that revealed "relatively well maintained" height of Plaintiff's vertebral bodies and intervertebral disc spaces, moderate straightening, and slight levoscoliosis (curvature of spine of more than 10 degrees). (R. 212).

On January 30, 2007, Disability Examiner C. Johengen ("D.E. Johengen") completed a residual functional capacity assessment on Plaintiff, and assessed Plaintiff

with the ability to occasionally lift 20 pounds, frequently lift or carry 10 pounds, stand or walk about 6 hours in an eight hour workday, sit 6 hours in an eight hour workday, unlimited ability to push or pull, and moderate restriction to bend, lift, and carry. (R. 233-37). D.E. Johengen assessed Plaintiff with normal gait and station, and the ability to heel-toe walk and squat. (R. 234). Cameron Huckell, M.D. ("Dr. Huckell") examined Plaintiff on January 30, 2007, and opined Plaintiff had a normal gait, was able to walk on his heels and toes, had full cervical range of motion and 50% of normal lumbar range of motion, that Plaintiff should not lift more than 10 pounds, avoid twisting, turning, reaching, and climbing, and should not sit, stand or walk for greater than two hours at one time, and that Plaintiff's workday should not exceed eight hours. (R. 264-65).

On August 27, 2008, Plaintiff had an MRI test that showed mild tendinosis (tendon injury) in Plaintiff's right upper arm. (R. 260).

On November 19, 1008, Dr. Clerk evaluated Plaintiff and assessed Plaintiff with hypercholesterolemia, hypertension, and limb pain, and referred Plaintiff to a neurologist. (R. 268-69). On December 2, 2008, Lixin Zhang, M.D., Ph.D. ("Dr. Zhang") completed a neurological examination on Plaintiff that showed normal tone and bulk in Plaintiff's limbs, normal coordination, stable gait, and tension headaches as a result of increased stress. (R. 276). On December 1, 2008, Dr. Clerk completed a residual functional capacity on Plaintiff that showed Plaintiff able to lift and carry ten pounds, stand and walk less than 2 hours each day, and sit less than 2 hours each day. (R. 267).

On July 30, 2010, Daniel R. Sileo, M.D. ("Dr. Sileo") completed an MRI test of

Plaintiff's lumbar spine that revealed

> [r]ather mild lumbar disk degeneration involv[ing] [Plaintiff's] lower four lumbar
> disks with multilevel disk bulges . . . [a] moderate-sized simple appearing S2-3
> level Tarlov cyst . . . of uncertain clinical significance . . .

(R. 282).

Dr. Sileo requested a neurosurgical consultation in order to provide additional

evaluation and management. *Id*. On August 12, 2010, Konrad Kijewski, M.D. ("Dr.

Kijewski") administered a cervical epidural steroid injection on Plaintiff's cervical spine in

an effort to alleviate Plaintiff's lower back pain. (R. 289).

## DISCUSSION

### 1.     Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to
> result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months. . ..  An individual shall be
> determined to be under a disability only if his physical or mental
> impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and
> work experience, engage in any other kind of substantial gainful work
> which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform

any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant. *Parker v.*

*Harris,* 626 F.2d 225, 231 (2nd Cir. 1980).


A.      **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S.

389, 401 (1971). Substantial evidence requires enough evidence that a reasonable

person would "accept as adequate to support a conclusion." *Consolidated Edison Co.*

*v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

While evaluating a claim, the Commissioner must consider "objective medical

facts, diagnoses or medical opinions based on these facts, subjective evidence of pain

or disability (testified to by the claimant and others), and . . . educational background,

age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983)

(quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating

physician is supported by medically acceptable techniques and results from frequent

examinations, and the opinion supports the administrative record, the treating

physician's opinion will be given controlling weight. *Scherler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is

supported by substantial evidence. *Dumas,* at 1550; 42 U.S.C. §§  405(g) and

1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[4] if

_____

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the
function of the Secretary of Health and Human Services in Social Security cases was transferred to the

supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period of which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[5]  42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646

---

Commissioner of Social Security, effective March 31, 1995.

[5] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§  404.1509 and 416.909.

F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v. Schweiker, supra*, at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry, supra*, at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson v. Perales*, 402 U.S. 389, 410 (1971).

**B.    Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it

11

includes less responsibility or pay than work previously performed.   20 C.F.R. §

404.1572(a). Earnings may also determine engagement in substantial gainful activity.

20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff did not engage in

substantial gainful activity since October 21, 2005, the onset date of the alleged

disability. (R. 14). That finding is not disputed.

## C.    Severe Physical or Mental Impairment

The second step of the analysis requires a determination whether Plaintiff had a

severe medically determinable physical or mental impairment that meets the duration

requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do

"basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes

necessary to do most jobs," and includes physical functions like walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing,

hearing, and speaking; understanding, carrying out, and remembering simple

instructions; use of judgment; responding appropriately to supervision, co-workers and

usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§

404.1521(b), 416.921(b).

In the instant case, the ALJ found Plaintiff's herniated/bulging lumbar discs were

a severe impairment as defined under 20 C.F.R. § 404.1521, but that Plaintiff's bursitis,

tenosynovitis and mild tenderness of the right shoulder did not meet the Act's durational

requirement and were therefore not severe. (R. 14). That finding is undisputed.

## D.    Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments

are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of

Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled"). The only relevant listing of impairments in this case is 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.00 (Musculoskeletal System).

Disorders of the musculoskeletal system may result from hereditary, congenital, or acquired pathologic processes, and may result from infectious, inflammatory, or degenerative processes, traumatic or developmental events. C.F.R. Pt. 404, Subt. P, Appendix 1 § 1.00A (§ 1.00A"). Loss of function may result from bone or joint deformity, or destruction from any cause, miscellaneous disorders of the spine with or without radiculopathy, or other neurological deficits. 20 C.F.R. Pt. 404, Subt. P, Appendix 1 § 1.00B1 ("§ 1.00B1"). In considering whether a plaintiff is disabled by a disorder of the musculoskeletal system, loss of function is defined as "the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason including pain associated with the underlying musculoskeletal impairment." 20 C.F.R. Pt. 404, Subt. P, Appendix 1  § 1.00B2a ("§ 1.00B2a"). Relevant to this case, the inability to ambulate effectively or perform fine and gross movements must have lasted for at least twelve months, and is defined as "an extreme limitation of the ability to walk, (for example an impairment that

interferes very seriously with an individual's ability to initiate, sustain, or complete

activities)." 20 C.F.R. Pt. 404, Subt. P, Appendix 1  § 1.00B2b1 ("§ 1.00B2b1").

According to Section 1.04 of the Listing of Impairments, a person may be

disabled based on disorders of the spine if medical evidence demonstrates herniated

nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

disease, facet arthritis, or vertebral fracture, resulting in compromise of a nerve root or

the spinal cord, and is accompanied by one of the following:

> A.   Evidence of nerve root compression characterized by neuro-
>       anatomic distribution of pain, limitation of motion of the spine,
>       motor loss (atrophy with associated muscle weakness or muscle
>       weakness) accompanied by sensory or reflex loss and, if there is
>       involvement of the lower back, positive straight-leg raising test
>       (sitting and supine);
>       or
> B.   Spinal arachnoiditis, confirmed by an operative note or pathology
>       report of tissue biopsy, or by appropriate medically acceptable
>       imaging, manifested by severe burning or painful dysesthesia,
>       resulting in the need for changes in position or posture more than
>       once every 2 hours;
>       or
> C.   Lumbar spinal stenosis resulting in pseudoclaudication, established
>       by findings on appropriate medically acceptable imaging,
>       manifested by chronic nonradicular pain and weakness, and
>       resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, §1.04 ("§ 1.04").

In this case, the ALJ, as required, evaluated Plaintiff's lumbar disc impairment

under 20 CFR Part 404, Subpart P, Appendix 1( §§ 404.1525 and 404.1526),

determining Plaintiff's impairment did not meet or equal the specific severity

requirements of any musculoskeletal or other listing under the Act. (R. 15). Specifically,

the ALJ determined that inasmuch as substantial evidence established Plaintiff had

lumbar pathology, "the nature of [Plaintiff's] pathology [wa]s generally described as mild

or slight and the size of disc protrusions/herniations [w]as small," that Plaintiff had not opted for surgery, and that Plaintiff was not credible about the disabling nature of the symptoms and functional limitations of Plaintiff's disc disease insofar as Plaintiff's complaints were inconsistent with the residual functional capacity. (R. 17). The ALJ's finding that Plaintiff exhibited lumbro spinal stenosis resulting in pseudoclaudication (pain in the buttocks, thighs, legs and feet with prolonged walking or standing) supported by findings on appropriate medically acceptable imaging and manifested by chronic nonradicular pain and weakness under § 1.04C, that did not otherwise result in the inability to ambulate effectively as defined in 20 U.S.C. Pt. 404, Subpt. P, App. 1 § 1.00B2b ("§ 1.00B2b") is supported by substantial evidence.

        In particular, an MRI test of Plaintiff's lumbro-sacral spine on November 5, 2005, revealed foraminal disc herniation at Plaintiff's L5-S1 disc segments and bulging at Plaintiff's L4-L5 annulus fibrosus with a left lateral annular fissure (R. 228), and an MRI on February 24, 2006 revealed "mild acquired central canal stenosis at [Plaintiff's] L2-L3 where there is a concentric tear of the posterior aspect of Plaintiff's annulus fibrosus," establishing Plaintiff's lumbar disc disease demonstrates the requisite criteria under § 1.04C. Discussion, *supra*, at 13. (R. 230-31). This, without more, however, does not rise to the inability to ambulate effectively as defined under § 1.00B2b (not capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, travel without companion assistance, or walk unassisted without a walker). Rather, Plaintiff's own testimony of his activities of daily living include riding on a lawn mower for about 20 minutes, and serving as an associate pastor at his church. (R. 35-39). Plaintiff also testified that after sitting for 20 minutes,

he had to "walk around the hallways to loosen up my back . . . " (R. 35).

Nor did the ALJ misapply the treating physician's rule, requiring granting a treating physician's opinion "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (" § 404.1527(d)(2)"). In particular, the Act provides

> [g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2); *Clark v. Commissioner of Soc. Sec.*, 114 F.3d. 115, 118 (2d Cir. 1998).

The regulations define "treating source" as a claimant's "own physician, psychologist, or other acceptable medical source who provides [a claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §404.1502. A treating physician's opinions, however, are not determinative and are given controlling weight only when not inconsistent with the other controlling evidence. 20 C.F.R. §404.1527(d); *Halloran v. Barnhart*, 362 F.3d 28, 31-31 (2d Cir. 2004) (citing *Vieno v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)).

Here, the ALJ assigned "great weight" to Dr. Schwab's consultative medical

opinion determining that the medical evidence supported that Plaintiff, although suffering from disc disease, was still able to bend, lift and carry with moderate restrictions, that Plaintiff exhibited a full range of motion of his cervical spine, had normal gait and station, and used no assistive devices. (R. 19). Dr. Schwab's opinions are supported by the opinions of Plaintiff's other physicians, Dr. Huckell (R. 265), and Dr. Zhang. (R. 276). Notably, on February 19, 2007, Dr. Huckell opined Plaintiff was "able to walk with a normal gait and able to walk on his heels and toes showing good balance and coordination, that Plaintiff should avoid twisting, turning, reaching and climbing, and not sit stand or walk for greater than two hours at one time, and that Plaintiff's workday should not exceed eight hours. (R. 265). A neurological examination with Dr. Zhang on December 2, 2008, showed Plaintiff with normal coordination, full strength in his limbs, and a stable gait (R. 276), further supporting Dr. Schwab's opinion Plaintiff's gait was normal, that Plaintiff was able to walk on his heels and toes without difficulty, and thus able to ambulate effectively. (R. 209). Further, although Dr. Cappuccino, Plaintiff's orthopedic surgeon, opined Plaintiff has a "marked degree of disability" based on degenerating and bulging discs in his lumbro-sacral spine, Dr. Cappuccino also reported Plaintiff was neurologically and vascularly intact, without weakness, that Plaintiff's symptoms were improving with conservative chiropractic treatment, and that Plaintiff did not wish to pursue surgical intervention. (R. 178-79). As such, the ALJ complied with the Act's requirement to provide good reasons in [the] notice of determination or decision for the weight given a claimant's treating source's opinion required under § 404.1527(d)(2), and complied with the treating physician's rule. Simply put, the record is devoid of any indication that Plaintiff's back impairment

limited Plaintiff's ability to effectively ambulate.

The medical record thus establishes that Plaintiff's lumbro-sacral disc disease does not meet the criteria under § 1.04C of the Act such that Plaintiff is not disabled based on a listed impairment. The ALJ next considered whether Plaintiff, despite suffering from degenerative lumbro-sacral disc disease which neither met nor equaled any listed impairment, nevertheless retained the residual functional capacity to perform a side range of sedentary work.  (R. 19).

**E.    "Residual Functional Capacity" to Perform Past Work**

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work.  "Residual functional capacity" is defined as the most work a claimant can still do despite limitations from an impairment and/or its related symptoms. 20 C.F.R. § 416.945(a).  If a claimant's residual functional capacity is insufficient to allow the performance of past relevant work, the ALJ must assess the claimant's ability to adjust to any other work. 20 C.F.R. § 416.1560(3)(c). In the instant case, the ALJ did not consider Plaintiff's work as a pastor as Plaintiff's earnings from that job were less than required for substantial gainful activity. (R. 19). The ALJ further found that inasmuch as Plaintiff was unable to perform his past relevant work as a carpenter (as the carpentry work required greater exertion) Plaintiff retained the residual functional capacity to perform a wide range of light work with some limitations. (R. 20). That finding is not disputed.

**F.    Suitable Alternative Employment in the National Economy**

After the ALJ determined Plaintiff was unable to perform his past relevant work as a carpenter (R.19), the ALJ then determined whether Plaintiff would be qualified or

suitable for any position within the national economy. The Second Circuit requires that
"all complaints . . . must be considered together in determining . . . work capacity."
*DeLeon,* 734 F.2d at 937.  Once an ALJ  finds a plaintiff's impairments prevent a return
to previous work, the burden shifts to the Commissioner to prove substantial gainful
work exists and that the plaintiff is able to perform in light of his physical capabilities,
age, education, experience, and training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.
1980).

It is improper to determine a claimant's residual work capacity based solely upon
an evaluation of the severity of the claimant's individual complaints.  *Gold v. Secretary
of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972).  To make such a
determination, the Commissioner must first show that the applicant's impairment or
impairments are such that they permit certain basic work activities essential for other
employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981).
Specifically, the Commissioner must demonstrate by substantial evidence the
applicant's "residual functional capacity" with regard to the applicant's strength and
"exertional capabilities."  *Id*. at 294.

An individual's exertional capability refers to the performance of "sedentary,"
"light," "medium," "heavy," and "very heavy" work.[6]  *Decker*, 647 F.2d at 294.  In
addition, the Commissioner must prove that the claimant's skills are transferrable to the

---

[6]  "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally
lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and
standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §404.1567(a).

new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[7]  *Id.* at 294.  This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. In this case, the ALJ properly determined Plaintiff could not return to his past work as a carpenter as it required greater exertion than "light" work. (R. 19).

The ALJ based the finding of the Plaintiff's ability to perform light work on the testimony of the vocational expert and the Plaintiff's testimony describing his limitations. (R. 27-54). In particular, at the hearing, vocational specialist Jay Steinbrenner ("Steinbrenner") ("the V.E.") testified, and reviewed Plaintiff's credentials and limitations, concluding that substantial gainful employment opportunities exist that an individual the same age and education of Plaintiff, who was capable of, at most, light exertion, was capable of performing. (R. 48). The V.E. determined these employment opportunities included carpentry estimation work, sedentary, skilled, with total job titles of 238,136 positions nationally and 970 in the Western New York region (R. 49); and construction manager, light, skilled, with 226,270 positions nationally and 2,710 positions in the

---

[7]  The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".  *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."
20 C.F.R. §404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. §404.1568(b).

Western New York area. (R. 50). The V.E. further determined that both positions would allow for incidental postural adaptation totaling up to but not more than one-sixth of a routine work day, a postural adaptation to stoop, kneel, crouch, crawl, balance, climb ladders, ropes, or scaffolds, with no exposure to heights, dangerous machinery and a discretionary sit-stand option. *Id*. The ALJ relied on the testimony of the vocational expert, and thus properly determined that suitable employment opportunities exist in the national and regional economies that Plaintiff is capable of performing and that Plaintiff is not disabled. There is not contrary evidence in the record. Accordingly, the ALJ's determination that alternative work suitable to Plaintiff's residual functional capacity exists in the national economy is supported by the record.

## CONCLUSION

Based on the foregoing, Defendant's motion for judgement on the pleadings should be GRANTED, and the Clerk of the Court should be instructed to close the file

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 28, 2012
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Limited, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ Leslie G. Foschio

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       February 28, 2012
             Buffalo, New York